USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/7/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AGNES XIAOHONG XIE,

    Plaintiff,

-against-

THE JPMORGAN CHASE SHORT-TERM DISABILITY PLAN and JPMORGAN CHASE EMPLOYEE RELATIONS EXECUTIVE *in his or her capacity as the plan administrator of The JPMorgan Chase Short-Term Disability Plan*,

    Defendants.

15-cv-04546 (LGS) (KHP)

OPINION, REPORT AND RECOMMENDATION

**TO: THE HONORABLE LORNA G. SCHOFIELD, United States District Judge**

**FROM: KATHARINE H. PARKER, United States Magistrate Judge**

    Plaintiff Agnes Xie, proceeding pro se, brings this action under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to recover short-term disability ("STD") benefits pursuant to a short-term disability plan offered by her former employer, JPMorgan Chase Bank, N.A. ("JPMC").

    Plaintiff has moved for leave to file a Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 15. (Doc. No. 52.) Plaintiff also requests permission to file certain medical records under seal. (Doc. No. 64.) For the reasons set forth below, this Court recommends that Plaintiff's motion for leave to amend be denied insofar as it seeks to add claims under Sections 502(a)(3) and 510 of ERISA and to the extent it seeks to add claims under Section 502(c) of ERISA premised upon plan document requests made orally and to nonadministrators. This Court grants Plaintiff's motion for leave to amend insofar as it seeks to add a claim under Section 502(c) of ERISA premised upon Plaintiff's written request for plan documents made to the Plan Administrator. Finally, this Court denies Plaintiff's motion to seal (Doc. No. 64) as moot.

**BACKGROUND**

On September 12, 2013, JPMC offered Plaintiff a full-time position as an Executive Director in the Model Risk & Development Group in JPMC's New York office. JPMC set out the terms of its offer in an agreement of the same date. Plaintiff accepted the offer and commenced work on September 30, 2013.

Under the terms of her employment agreement, Plaintiff was eligible to participate in JPMC's Short-Term Disability Plan (the "STD Plan") and other benefit plans included as part of JPMC's "Wrap Plan" in accordance with the terms and conditions of such plans. The STD Plan designates JPMorgan Chase Employee Relations Executive as the Plan Administrator.

As a condition of her hire, Plaintiff also entered into an Arbitration Agreement (the "Agreement"), in which Plaintiff agreed to submit "Covered Claims" to final and binding arbitration before the American Arbitration Association ("AAA") in accordance with the terms of the Agreement. The Agreement defines "Covered Claims" as all legally protected employment-related claims (subject to certain specifically identified exceptions) against JPMC, including, but not limited to, "claims of employment discrimination or harassment if protected by applicable federal, state or local law, and retaliation for raising discrimination or harassment claims, failure to pay wages, bonuses or other compensation, tortious acts, wrongful, retaliatory and/or constructive discharge . . . ." (Doc. No. 60-5, ¶ 2.) Certain claims, including "claims for benefits under a plan that is governed by Employee Retirement Income Security Act of 1974 ("ERISA")," among others, are specifically excluded from arbitration under the Agreement. (Doc. No. 60-5, ¶ 3.)

Within two weeks of her start date and continuing through December 10, 2013, Plaintiff

complained of certain defects in her workstation that caused an injury to her shoulder, as well as pain in her shoulder, neck and back, and severe headaches. The SAC alleges that Plaintiff's supervisor knew of and acknowledged her complaints.

JPMC designated "Access HR" as the channel for JPMC employees to report leaves of absence and make inquiries about leave of absence benefits. Between November 2013 and December 2013, Plaintiff called Access HR at least three times and spoke to two different Human Resources ("HR") representatives to inquire how to file STD and workers' compensation claims and to request plan documents and company policies. According to Plaintiff, Access HR told Plaintiff that she was not eligible for short-term disability or workers' compensation benefits, refused to provide Plaintiff with information, denied Plaintiff access to Plan documents, and refused to disclose the identity of the STD Plan Administrator.

Plaintiff states that she "commenced a leave of absence from work . . . due to [a] psychological condition . . . triggered by physical injuries that she was enduring" on December 29, 2013. (SAC ¶ 12.) While on leave, Plaintiff contacted Access HR again and was again informed that she could not file a claim for short-term disability benefits or workers' compensation because she had not completed a 90-day "Introductory Period." (SAC ¶ 12.) Plaintiff's employment was terminated on December 30, 2013.

After her termination from employment, Plaintiff contacted Access HR on at least three more occasions about filing claims for STD and workers' compensation benefits. According to the SAC, the HR representatives repeated what they previously communicated—that Plaintiff was not eligible for these benefits because she had not worked for 90 days—and continued to refuse to provide Plaintiff with Plan documents and contact information for filing a claim.

In an effort to get information from another source, Plaintiff then contacted the New York State Workers' Compensation Board and its Disability Benefits Bureau (collectively, the "WCB"), which allegedly informed her that JPMC's policies violated state laws. Thereafter, on March 20, 2014, Plaintiff called Access HR again regarding filing an STD benefits claim and to again request documentation regarding workers' compensation benefits. On this call, Plaintiff informed the HR representative that she had filed a claim with the WCB. The HR representative again refused to send Plaintiff the requested documentation.

Nevertheless, on March 25, 2014, Plaintiff filed a claim for STD benefits under the STD Plan by fax to JPMorgan Chase Disability Management Services ("DMS"), the claims administrator for the STD Plan. The SAC is silent as to how Plaintiff learned how and where to file her STD claim. Plaintiff alleges that she also made telephonic requests for STD Plan documents to DMS, but these requests were ignored.

On April 9, 2014, DMS denied Plaintiff's claims for New York State short-term disability benefits and for supplemental STD benefits under the STD Plan because her claim was untimely. Plaintiff contends she was never advised of any deadline for filing a benefits claim. Plaintiff filed an administrative appeal on April 28, 2014, which DMS denied on June 10, 2014.

On July 14, 2014, the WCB determined that Plaintiff was entitled to New York State short-term disability benefits for the period running from December 2013 to June 2014. On July 24, 2014, DMS reversed its prior denial of New York State short-term disability benefits, but continued to deny Plaintiff's claim for supplemental STD benefits under the STD Plan. Plaintiff subsequently filed two additional administrative appeals from the denial of STD benefits to DMS, both of which were denied.

4

On December 28, 2014, Plaintiff made a written request for STD Plan documents to the named Plan Administrator. She received the STD Plan documents from JPMC's Legal Department by email in January 2015.

Plaintiff commenced this action on June 8, 2015, seeking to recover unpaid STD benefits under the STD Plan pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). On November 5, 2015, Plaintiff filed an Amended Complaint, which asserted the same cause of action as the initial Complaint but modified the factual allegations recited therein. Defendants subsequently filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On July 20, 2016, the Honorable Lorna G. Schofield denied Defendants' motion to dismiss.

On or about August 9, 2016, Plaintiff requested permission to further amend her pleading, but indicated that, because of disability, she needed an extension of time to do so as an accommodation. Judge Schofield granted Plaintiff's request, stayed this case for six months, and ordered Plaintiff to file either a motion to amend or a letter stating that she no longer sought an amendment by no later than February 10, 2017. Judge Schofield further ordered that Plaintiff's failure to file such a motion or letter by February 10, 2017 would result in the case being dismissed without prejudice.

On February 21, 2017, Judge Schofield dismissed this case without prejudice because Plaintiff had not filed a motion or letter regarding her proposed amendments. Plaintiff subsequently moved to reopen the case. Judge Schofield granted Plaintiff's request to reopen and ordered her to file a motion for leave to amend her complaint by March 15, 2017.

On March 11, 2017, Plaintiff filed the instant motion for leave to amend and on May 4,

2017, filed her request for permission to file certain medical records under seal in connection with her motion to amend.

## DISCUSSION

I. **LEGAL STANDARD FOR AMENDMENTS TO A COMPLAINT**

Under Rule 15(a) of the Federal Rules of Civil Procedure, "a party may amend its pleading once as a matter of course within . . . 21 days after serving it or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (citation omitted).

Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000). Here, Defendants argue that Plaintiff's proposed amendments are futile and should not be permitted. Proposed amendments are futile when they would fail to "state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)). Thus, in reviewing the proposed amended pleading the Court must determine whether the complaint contains sufficient facts, which if taken as true, state new

claims for relief that are plausible on their face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While detailed factual allegations are not required, the complaint must contain more than mere "labels and conclusions." *Id.*; *see also Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717-18 (2d Cir. 2013).

The same standard applies to both counseled and pro se complaints. *See Legeno v. Corcoran Grp.*, 308 F. App'x 495, 496 (2d Cir. 2009); *Jenkins v. N.Y.C. Dep't of Educ.*, No. 10-cv-6159 (BSJ) (THK), 2011 WL 5451711, at *3 (S.D.N.Y. Nov. 9, 2011) (pro se status "does not . . . excuse a plaintiff from compliance with the pleading standards of the Federal Rules of Civil Procedure"). However, a pro se plaintiff's complaint must be construed liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and interpreted as raising the strongest arguments it suggests. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).

"Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Beauvoir v. Israel*, 794 F.3d 244, 248, n.4 (2d Cir. 2015) (internal quotation marks and alteration omitted). "'[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nonetheless take the document into consideration in deciding the defendant's motion to dismiss . . . ." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)). Defendants attach as exhibits to their brief excerpts of the STD Plan and the Wrap Plan, as well as Plaintiff's Offer Letter and the Agreement, all of which are

7

discussed in the SAC and, thus, may be considered on this motion. *See Chen v. Antel Commc'ns, LLC*, 653 F. App'x 43, 43-44 (2d Cir. 2016).

II. **APPLICATION TO PLAINTIFF'S CLAIMS**

Here, Plaintiff seeks to add three new causes of action: breach of fiduciary duty pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3); failure to provide plan documents pursuant to Section 502(c) of ERISA, 29 U.S.C. § 1132(c); and discrimination in violation of Section 510 of ERISA, 29 U.S.C. § 1140. Defendants oppose Plaintiff's motion on the ground that her proposed amendments are futile because they are not legally colorable. Each proposed new claim is discussed in turn below.

*A.    Breach Of Fiduciary Duty Claim*

ERISA requires that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1). Section 502(a)(3) of ERISA enables a participant, beneficiary, or fiduciary "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief . . . ." 29 U.S.C. § 1132(a)(3). "Section 502(a)(3) has been characterized as a 'catch-all' provision which normally is invoked only when relief is not available under [ERISA] § 502(a)(1)(B)." *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 578 (2d Cir. 2006) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)); *see also Varity Corp.*, 516 U.S. at 515 ("where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief"). In addition, the U.S. Supreme Court has held that Section 502(a)(3) provides only equitable, not legal, relief. *Great-West Life & Annuity Ins. Co v. Knudson,* 534 U.S.

204, 209 (2002); *Wilkins*, 445 F.3d at 578 (stating that "fiduciary duty violations entitle claimants only to equitable relief under ERISA § 502(a)(3)"). Actions for legal damages are not cognizable under Section 502(a)(3). *See also, e.g., Knudson*, 534 U.S. at 209-10; *Hall v. Kodak Ret. Income Plan*, 363 F. App'x 103, 107 (2d Cir. 2010) (quoting 29 U.S.C. § 1132(a)(3)). For this reason, courts in this Circuit have repeatedly rejected attempts to repackage claims for "wrongful denial of benefits under Section 502(a)(1) as claims for breaches of fiduciary duties under Section 502(a)(3)." *Irvins v. Metro. Museum of Art*, No. 15-cv-5180 (RJS), 2016 WL 4508364, at *5 (S.D.N.Y. Aug. 26, 2016); *see also, e.g., Curran v. Aetna Life Ins. Co.*, No. 13-cv-00289 (NSR), 2013 WL 6049121, at *8 (S.D.N.Y. Nov. 15, 2013).

Plaintiff identifies four ways in which Defendants breached their fiduciary duties: (i) they failed to inform Plaintiff that she was required to file a claim for STD benefits under the STD Plan within 30 days in order for her claim to be timely; (ii) they denied Plaintiff's requests to file a claim for STD benefits until March 2014; (iii) they incorrectly advised Plaintiff that she was not eligible to file a STD benefits claim because she did not complete the 90-day introductory period; and (iv) they knowingly concealed New York State law governing eligibility for New York STD and workers' compensation benefits. The relief Plaintiff seeks for these alleged breaches is an amount equal to the unpaid STD benefits Plaintiff claims she is due under the STD Plan, an order precluding enforcement of the Plan's eligibility provision based on an equitable estoppel theory, and "[r]eformation of the terms of the Plan to allow the Plaintiff an equitable remedy." (SAC ¶¶ 8-16.) Defendants argue that Plaintiff should not be permitted to add a claim for breach of fiduciary duty because such a claim is duplicative of her cause of action for unpaid STD benefits under the Plan and seeks relief that can be obtained through the unpaid benefits cause of action.

9

This Court agrees.

As noted above, whether Plaintiff may amend her pleading to add a claim for breach of fiduciary duty turns on whether the relief Plaintiff seeks is equitable or legal and whether it can obtained through her existing benefits claim. *Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 657 (2016). The Supreme Court made clear in *Knudson* that suits seeking a sum of money almost always "are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Knudson*, 534 U.S. at 210. Having reviewed the proposed SAC, it is clear to this Court that Plaintiff is simply seeking legal damages—unpaid STD benefits— which would "would neither redress a loss flowing from [Defendant's] breach of fiduciary duty nor prevent [Defendant's] unjust enrichment" *N.Y. St. Psychiatric Ass'n, Inc., v. UnitedHealth Grp.*, 798 F.3d 125, 135 (2d Cir. 2015) (describing the difference between equitable and legal remedies). In fact, Plaintiff concedes that payment of STD benefits will make her whole and render her pursuit of equitable relief under Section 502(a)(3) of ERISA moot. (Doc. No. 65, ¶ 2.A.) This concession also belies Plaintiff's request that the Court equitably estop Defendant's application of the STD Plan rules and/or reform the STD Plan so that she can qualify for STD benefits. This Court declines Plaintiff's request to infer "equitable clothing where the requested relief is nakedly contractual." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 104 (2d Cir. 2005). *See Knudson,* 534 U.S. at 221 ("Because petitioners are seeking legal relief—the imposition of personal liability on respondents for a contractual obligation to pay money—§ 502(a)(3) does not authorize this action."); *Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006) ("While the plaintiffs seek to expand the nature of their claim by couching it in equitable terms to allow relief

under § 502(a)(3), the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available."). In sum, because Plaintiff can obtain a full remedy in connection with her claim for unpaid STD benefits under Section 502(a)(1)(B), she cannot bring a claim under Section 502(a)(3) as a matter of law.

Plaintiff's proposed claim for breach of fiduciary duty is improper for the additional reason that the SAC does not allege facts upon which it can be concluded that any of the allegedly fraudulent statements or omissions were made by fiduciaries of the Plan. Under ERISA,

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or any discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Excluded from the definition of fiduciary are "plan employees who perform ministerial tasks with respect to the plan, such as the application of rules determining eligibility for participation, preparation of plan communication materials, the calculation of benefits, and the maintenance of employee records." *Bell v. Pfizer, Inc.*, 626 F.3d 66, 74 (2d Cir. 2010). In this case, Plaintiff accuses representatives from Access HR of giving her incorrect information and concealing other information.[1] Access HR is not the Plan Administrator or a designated fiduciary. Nor does the SAC contain any facts from which it can be inferred that the Access HR employees were acting as *de facto* fiduciaries. *Tocker v. Kraft Foods N. Am., Inc. Ret. Plan*, 494 F. App'x 129, 131-32 (2d Cir. 2012) ("[a]nd, while there is precedent indicating that a

---

[1] To the extent Plaintiff contends that DMS breached a fiduciary duty, the SAC does not contain any factual allegations to support such a claim.

fiduciary's responsibilities may include communicating plan information to participants, no case law, statutory text, or regulation suggests that one acquires fiduciary status merely by communicating such information.").

Accordingly, this Court recommends that Plaintiff's motion for leave to amend her pleading to add a claim for breach of fiduciary duty under Section 502(a)(3) of ERISA be denied with prejudice.

### B. Statutory Disclosure Penalty Claims

Plaintiff also seeks to add a claim pursuant to Section 502(c) of ERISA because Defendants failed to timely provide her with a copy of STD Plan by mail after she requested it.

Section 104(b)(4) of ERISA requires that "the [plan] administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Pursuant to ERISA Sections 502(a)(1)(A) and 502(c)(1), a beneficiary may bring a civil action when a plan administrator fails to supply requested plan information. See 29 U.S.C. §§ 1132(a)(1)(A), 1132(c)(1). Specifically, Section 502(c)(1)(B) provides that when a plan administrator "fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request," a court, in its discretion, may hold the plan administrator "personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and . . . may . . . order such other relief as it deems proper." 29 U.S.C. §

1132(c)(1)(B).

Plaintiff alleges that she is entitled to recover the statutory disclosure penalty under Section 502(c) because she repeatedly requested STD Plan information and documents between November 2013 and December 2014 and never received the requested documents. According to the SAC, all of Plaintiff's requests—except for one request made on December 28, 2014—were made orally to representatives of Access HR and DMS. These allegations are insufficient to state a claim for a statutory disclosure penalty for two reasons. First, Plaintiff admits that these requests were made orally, not in writing as is required to trigger Section 104(b)(4) of ERISA. 29 U.S.C. § 1024(b)(4) (requiring plan administrator to furnish documents upon a participant's written request). Second, Plaintiff admits that these requests were made to Access HR and DMS, not the designated Plan Administrator, JP Morgan Chase Employee Relations Executive. *See, e.g., Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 631 (2d Cir. 2008) (dismissing a claim for statutory damages where the requests for plan documents were not made to the plan administrator); *Curran*, 2013 WL 6049121, at *3-4 (holding that "[s]tatuory penalties may not be imposed upon nonadministrators"). This Court accordingly recommends that Plaintiff's request for leave to amend to add a claim for statutory disclosure penalties premised upon the oral requests made to Access HR and DMS be denied with prejudice.

With respect to Plaintiff's alleged written request for STD Plan documents made on December 28, 2014, Plaintiff asserts for the first time in her reply brief that this request was submitted to the "plan administrator" by mail. (Doc. No. 65, pp. 6-7.) She further claims that she did not receive the requested Plan documents by mail until May 2017. Accepting these representation as true, and assuming they are integrated into an amended pleading, Plaintiff has

proffered sufficient facts to state a claim for statutory disclosure penalties premised upon her December 28, 2014 request.[2] As a result, this Court will grant Plaintiff's motion for leave to amend to add a claim for statutory disclosure penalties premised upon Plaintiff's alleged written request for plan documents on December 28, 2014, provided that Plaintiff must clarify in the SAC submitted pursuant to this Order that her December 28, 2014 request was made in writing to the Plan Administrator, as she represents in her reply brief.

### C. Claim Under Section 510 Of ERISA

The last claim Plaintiff seeks to add to her Complaint is one for discrimination. Under Section 510 of ERISA, it is unlawful for

> any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140. Plaintiff contends JPMC violated Section 510 when it terminated her employment to prevent her from receiving STD benefits.

Defendants argue that Plaintiff should not be permitted to add a Section 510 claim in this action because, pursuant to the Arbitration Agreement Plaintiff signed at the start of her employment, this claim can only be resolved in arbitration before the AAA and Plaintiff has

---

[2] It is far from clear whether Plaintiff will ultimately prevail on this claim. Plaintiff admits that JPMC sent her a copy of the requested Plan documents via email within 30 days of her December 28, 2014 request and, under ERISA, plan documents may be provided by electronic means under certain circumstances. *See* 29 C.F.R. § 2520.104b-1(c). Moreover, "the ultimate assessment of [statutory disclosure] penalties is a discretionary matter." *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 90 (2d Cir. 2001). In determining the appropriate penalty here, the court is free to consider whether Plaintiff did in fact possess the Plan documents within 30 days of her request. It also bears mention that JPMC's STD Plan Summary and Plan Administration Guide are publicly available online, as this Court was able to quickly find the documents through an online search.

already commenced an arbitration in AAA to adjudicate this claim.

The Federal Arbitration Act (the "FAA") provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of [the] contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. "[T]he FAA compels judicial enforcement of a wide range of written arbitration agreements," *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001), and applies to agreements to arbitrate disputes arising out of employment in the securities industry, as well as agreements to arbitrate statutory ERISA claims. *See, e.g., Rusciano v. Oppenheimer & Co., Inc.*, No. 14-cv-1452 (CM), 2014 WL 1677133 (S.D.N.Y. Apr. 25, 2014); *Savarese v. J.P. Morgan Chase*, No. 16-cv-321 (JFB) (SIL), 2016 WL 7167968 (E.D.N.Y. Nov. 16, 2016), *adopted by*, 2016 WL 7176601 (E.D.N.Y. Dec. 7, 2016); *Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 122 (2d Cir. 1991) (holding that the FAA requires courts to enforce agreements to arbitrate statutory ERISA claims); *Murphy v. Canadian Imperial Bank of Commerce*, 709 F. Supp. 2d 242, 247 (S.D.N.Y. 2010) (compelling arbitration of claims arising under ERISA).

The Supreme Court has repeatedly instructed that the FAA "embod[ies] [a] national policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (second alteration in original) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). Indeed, "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the Second Circuit has] often and emphatically applied." *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) (quotations omitted). This policy "requires [the Court] to construe arbitration clauses as broadly as possible." *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (quotations omitted). To determine whether to compel arbitration, the Court must assess two considerations: "(1) whether the parties agreed to arbitrate, and, if so, (2)

whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015).

In this case, Plaintiff does not dispute that she signed the Arbitration Agreement or that she agreed to arbitrate certain employment-related claims against JPMC. She also does not dispute that the copy of the Arbitration Agreement Defendants annexed to their motion papers is a true and accurate copy of the version she signed. Accordingly, the first consideration—whether the parties agreed to arbitrate—weighs in favor of requiring Plaintiff to submit her Section 510 claim to arbitration.

The second inquiry—whether the scope of the Arbitration Agreement encompasses Plaintiff's Section 510 claim—also tips in favor in finding that Plaintiff's request to amend the complaint to add a new Section 510 claim is futile. Here, the Arbitration Agreement requires Plaintiff to submit all "Covered Claims" claims against JPMC to arbitration before AAA, subject to certain carve-outs that are listed in the Agreement. "Covered Claims" include, but are not limited to, the following employment-related claims of:

> employment discrimination or harassment if protected by applicable federal, state or local law, and retaliation for raising discrimination or harassment claims, failure to pay wages, bonuses or other compensation, tortious acts, wrongful, retaliatory and/or constructive discharge, breach of an express or implied contract, promissory estoppel, unjust enrichment, and violations of any other common law, federal, state, or local statute, ordinance, regulation or public policy, including, but not limited to Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, Section 1981 of the Civil Rights Act, and the Worker Adjustment and Retraining Notification Act.

(Doc. No. 60-5, p. 5.) The Arbitration Agreement further provides, in relevant part, that "claims for benefits under a plan that is governed by [ERISA]" "are not subject to arbitration under this

Agreement." (Doc. No. 60-5, pp. 5-6.)

Plaintiff argues that her Section 510 cause of action is not subject to arbitration because it is excluded under the terms of the Arbitration Agreement. However, the arbitration clause is clear. The only type of ERISA claim excluded from arbitration under the Agreement is a claim to recover benefits under an ERISA-governed plan, which is separate and distinct from a claim for wrongful termination under Section 510. The Arbitration Agreement does not contain a carve-out for Section 510 claims and, on the contrary, specifically states that all claims for wrongful termination and retaliation are subject to arbitration, including those arising under federal statutes. Moreover, Plaintiff admits that she already commenced arbitration to assert a Section 510 claim, indicating that she believed the claim was subject to arbitration.

To the extent that Plaintiff contends that her Section 510 claim is not a "Covered Claim" because the ERISA statute was not specifically named in the "Covered Claims" provision of the Arbitration Agreement, such an argument is unavailing. The broad language of the Arbitration Agreement evinces the intent to encompass all discrimination and retaliation claims arising out of federal law, which would include claims for discriminatory termination in violation of Section 510 of ERISA. And while this Court believes that the language of the Arbitration Agreement clearly includes Plaintiff's Section 510 claim as a Covered Claim, even if there were some ambiguity, the law is clear that "doubts as to whether a claim falls within the scope of [an arbitration] agreement should be resolved in favor of arbitrability." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of

arbitration . . . . ")

Moreover, the Arbitration Agreement excludes from arbitration certain types of claims, including claims for unpaid benefits under a plan covered by ERISA, but Section 510 claims are not included among these exceptions. Under the principles of *expressio unius est exclusio alterius*, the decision to include only one specific type of ERISA claim as excluded from arbitration suggests that all other ERISA claims fall within the definition of Covered Claims and are subject to arbitration. *See, e.g., Chepilko v. Cigna Grp. Ins.*, No. 08-cv-4033 (JGK), 2012 WL 2421536, at *7 (S.D.N.Y. June 27, 2012) (where an insurance policy contained exceptions to the statute of limitations requirements for claims brought in Kansas and South Carolina, no such exception existed for claims brought in New York under "the textual canon of *expressio unius est exclusio alterius*" because "a New York exception was not expressed, and was thus excluded").

Thus, this Court respectfully recommends that Plaintiff's request to amend the Complaint to add a cause of action under Section 510 of ERISA be denied with prejudice as futile, because the claim is subject to mandatory arbitration. *See Oguejiofo v. Open Text Corp.*, No. 09-cv-1278 (RWS), 2010 WL 1904022, at *3 (S.D.N.Y. May 10, 2010) (denying a motion for leave to amend, in part, as futile where the claims plaintiff sought to add were barred by an arbitration clause).

### III. PLAINTIFF'S MOTION TO SEAL

Plaintiff moved to file certain medical records under seal in connection with her motion to amend, but she did not provide the Court with a copy of the records she wishes to seal. Plaintiff cites to these medical records in her reply briefs for the sole purpose of supporting her argument that the Court should disregard her testimony before the WCB. Plaintiff's WCB testimony is not relevant to her motion for leave to amend because it would not affect this Court's analysis of the

legal viability of the claims Plaintiff seeks to add to her pleading. Therefore, there is no need for Plaintiff to file the medical records at all, much less under seal. Accordingly, Plaintiff's motion to file medical records under seal is denied as moot.

## CONCLUSION

For the foregoing reasons, this Court recommends denying Plaintiff's motion for leave to amend to add claims for breach of fiduciary duty, discriminatory discharge, and failure of Access HR and DMS to provide her with STD Plan documents (Doc. No. 52). The Court grants Plaintiff's motion for leave to amend to add a claim against the STD Plan Administrator for failing to provide Plaintiff with a copy of the STD Plan documents and denies Plaintiff's motion to file documents under seal (Doc. No. 64.) as moot. Plaintiff is directed to revise the SAC by removing all additional claims other than the one for a statutory disclosure penalty against the STD Plan Administrator and to add the allegations made in her reply brief supporting such claim.

The Court further directs the Clerk of Court to lift the stay in this action.

**SO ORDERED.**

Date: June 7, 2017
New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge

## NOTICE

**The parties shall have fourteen days from the service of this Report and Recommendation to file written objections to the portions of this Opinion, Report & Recommendation that recommend denying Plaintiff's request to amend, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure (*i.e.,* until June 21, 2017). *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P.**

5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).

If any party files written objections to this Report and Recommendation, the opposing party may respond to the objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lorna G. Schofield at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Schofield. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).